IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

HUVER EDMONDO RODRIGUEZ,
ALIEN # A29-386-278,

    Petitioner,

vs.                                       Case Number 4:06cv493-SPM/WCS

ALBERTO GONZALES,
MICHAEL CHERTOFF,
MICHAEL ROZOS, DAVID WING,
DAVID HARVEY, and the
DEPARTMENT OF
HOMELAND SECURITY

    Respondents.

_____/

## REPORT AND RECOMMENDATION

Petitioner initiated this petition for writ of habeas corpus, filed under 28 U.S.C. § 2241, on October 19, 2006. Doc. 1. Respondents filed an Answer on December 21, 2006, asserting that Petitioner had failed to assist the Government in effecting his removal and that it is likely Petitioner would be removed when Petitioner clarifies his identity and citizenship. Doc. 14. Petitioner was given an opportunity to file a reply, doc. 15, but he has not responded. The petition is ready for a ruling.

**Claim of the § 2241 petition**

This petition for a writ of habeas corpus seeks release from what is claimed to be an indefinite period of custody. Petitioner does not challenge the final order of removal; rather, he contends that ICE will not be able to deport him in the "reasonably foreseeable future." Doc. 1, pp. 1-2. Petitioner is a native of Panama, and was born there in April, 1957. Petitioner has lived in the United States since 1985 and is currently being held at the Wakulla County Jail. Petitioner has been in custody since January 6, 2006, and alleges he has been held beyond the presumptively reasonable period of detention as established by Zadvydas v. Davis, 533 U.S. 678 (2001). As of this date, Petitioner has been detained a total of some 15 months.

**Background Facts**

Petitioner is a native and citizen of Panama who arrived in the United States on July 15, 1985, in Miami, Florida as a non-immigrant visitor and he was authorized to remain in the United States for one month. Doc. 14, p. 2; ex. A.[1] Petitioner remained in the United States and on July 31, 1990, Petitioner encountered U.S. Border Patrol officers in Miami who gave Petitioner until August 25, 1990 to depart the United States voluntarily. Ex. A. Petitioner did not leave the United States.

On August 27, 1987,[2] Petitioner pled guilty and was convicted of Possession of Marijuana in Hillsborough County, Florida. *Id.* Petitioner was sentenced to five days in

---

[1] All exhibits referenced are to those attached to the Answer, doc. 14.

[2] Exhibit B lists this date as August 27, 1989, and exhibit A shows the date as August 27, 1987. Regardless of which year (1987 or 1989), the conviction is noted.

Case Number 4:06cv493-SPM/WCS

jail.  Ex. A.  On April 13, 1990, Petitioner pled guilty and was convicted of Possession of Cocaine.  *Id.*  He was placed on one year probation.  *Id.*  Petitioner violated the conditions of his probation and was arrested.  *Id.*  Petitioner "was again placed on probation for two (2) years for the Cocaine charge and one (1) year for the Obstructing or Opposing officer without violence."  *Id.*

Due to Petitioner's overstaying his visitor Visa and subsequent criminal convictions, removal proceedings were commenced against Petitioner on or about January 11, 1991.  Doc. 14, p. 2; exhibits A, B.  Petitioner was charged with being deportable under former § 241(a)(2)[3] and § 241(a)(11)[4] of the Immigration and Nationality Act (hereinafter "INA").  Petitioner appeared for his deportation hearing in El Paso, Texas, and the Immigration Judge denied Petitioner's applications for Asylum under § 208 and § 243(h) of the INA.  *Id.*, at 2-3; Ex. C.  The Immigration Judge ordered Petitioner's removal from the United States to Panama and Petitioner waived his right to appeal.  Doc. 14, p. 3; ex. C.

On October 24, 1991, Petitioner was released from custody on an Order of Supervision.  Doc. 14, p. 3; ex. D.  The Order of Supervision required Petitioner to report on the 15th of each month to the INS office in Miami.  *Id.*  Petitioner failed to report as required and became classified as a fugitive by INS.  Doc. 14, p.3; ex. E.

---

[3] This provision concerns remaining in the United States for a longer time than permitted.  Ex. B.

[4] This provision is for having been "convicted of a violation of, or a conspiracy to violate, any law or regulation of a State, the United States, or a foreign country relating to a controlled substance . . . to wit, Possession of marijuana, in violation of F.S. 893.13; Possession of Cocaine, in violation of F.S. 893.13(a)(f)."  Ex. B.

Petitioner had two additional convictions in Hillsborough County, Florida. Ex. E. On June 10, 1993, Petitioner was convicted of Obstructing an Officer without violence. Ex. A. Petitioner was convicted of this same offense again on February 18, 1998. *Id.* Then, in December of 2005, Petitioner was arrested for driving without a license. *Id.* On January 6, 2006, some fifteen years after being released to supervision, Petitioner came to the attention of ICE agents when he was being held at the Hillsborough County Jail on the driving without a license charge. *Id.* Petitioner was taken into the custody of ICE on that day, and has remained in custody since that time. Doc. 14, p. 3; exhibits E and F.

On January 6th, ICE sent a travel document request packet to the Consul General of Panama in Coral Gables, Florida. Doc. 14, p. 3; ex. H. That letter advised that both of Petitioner's parents were deceased (father identified as Victor Jesus Rodriguez and mother identified as Ana Leonor Campaz), and both were citizens of Panama. Ex. H. On February 1, 2006, Petitioner was served with the usual notice of Warning for Failure to Depart. Doc. 14, p. 3; ex. I. The notice advised Petitioner that there were criminal penalties that were possible if he should fail to apply for travel documents in good faith, or take actions designed to prevent or hamper his removal from the United States. *Id.* Furthermore, Petitioner was given an Instruction Sheet which stated that any items checked off were mandatory requirements that Petitioner must provide to assist ICE in obtaining travel documents. Doc. 14, p. 4; ex. I. The only item checked on that Instruction Sheet, however, was for Petitioner to submit "pasports

(current and expired) to the INS." Ex. I.  The final sentenced stated: "If you have a copy of your passport, you are to submit it."  *Id.*

The following month, Petitioner was issued another notice of Warning for Failure to Depart on March 30, 2006.  Doc. 14, p. 4; ex. J.  That notice again advised Petitioner that he had an obligation to "make application in good faith, for a travel or other document necessary for" his removal.  *Id.*  Another Instruction Sheet was provided to Petitioner on March 30th, this time, nothing was checked indicating Petitioner was not required to provide any further documents and, presumably, his passport was provided.  Ex. J.

Petitioner was given a notice of File Custody Review on March 30, 2006, which stated that his custody status would be reviewed on or about April 6, 2006.  *Id.*  Thereafter, on July 20, 2006, a notice was given to Petitioner advising that he would be interviewed as part of his custody review on July 31st.  Doc. 14, p. 4; ex. L.  Petitioner was scheduled to be interviewed at the Wakulla County Jail.  Ex. L.

On August 25, 2006, ICE issued a decision to continue Petitioner's detention.  Ex. M.  The letter advising of Petitioner of the decision informed him that ICE based the decision on his apparent disrespect for the law due to his criminal convictions and driving violations.  *Id.*  Furthermore, his absconding from prior supervised release rendered him a flight risk.  *Id.*  Additionally, the letter advised that Petitioner's identity was in question.  *Id.*  Specifically, the letter stated: "You have not provided any proof of your citizenship or any credible witnesses, and this is the reason for your continued detention pursuant to 8 CFR 241.4 (threat/flight risk)."  *Id.*  It appears that Petitioner was

provided this notice sometime around September 20, 2006, even though it was issued in August, 2006. *Id.*[5]

On September 20, 2006, ICE sent another travel document request packet to the Consul General of Panama in Coral Gables, Florida. Doc. 14, p. 4; ex. N. ICE also sent a request to its headquarters in Washington, D.C., seeking assistance in obtaining travel documents for Petitioner from the Panamanian Embassy. Doc. 14, pp. 4-5; ex. O. On the following day, September 21st, Petitioner was served with another Warning for Failure to Depart notice and reminded of his obligation to assist in obtaining a travel document. Doc. 14, p. 5; ex. P. Furthermore, Petitioner was given another Instruction Sheet which stated that any items checked off were mandatory requirements that Petitioner must provide to assist ICE in obtaining travel documents. Exhibit P. This time, each item on the list had a checkmark indicating Petitioner was required to provide numerous documents to ICE. *Id.* These items included: submit passports; apply for a travel document/passport from his embassy or consulate; comply with all instructions from all embassies or consulates; provide ICE with "birth certificates, national identification cards, and any other document issued by a foreign government indicating [his] citizenship, nationality, place of birth, and place of residence prior to entering the United States;" provides names and addresses of family and friends in the United States and request their assistance; provides names and addresses of family and

---

[5] Although the letter was dated August 25, 2006, at the top; the date on the bottom of the letter is September 20, 2006. The second page, however, provides a "proof of service" which indicates a deportation officer served Petitioner with the document on September 25, 2006. Ex. M.

friends in his country of citizenship and request their assistance; take measures to request reinstatement of Petitioner's previous nationality; provide ICE with written copies of requests for travel documents from embassies or consulates; solicit permission from another country which might accept Petitioner. Ex. P.

In a letter dated September 20, 2006, Petitioner was informed that his "citizenship was not established." Ex. P. The letter directed Petitioner, by September 22nd, to show ICE a "family tree to prove [his] citizenship." *Id.* Further, the letter stated:

> Your identity is not known because you have not provided ICE with any documents to prove your nationality and citizenship. You are to provide this proof. Any attempt not to comply with this requirement is a direct attempt to hamper your removal.

Ex. P. Petitioner was then reminded of the Warning for Failure to Depart" form and the Instruction Sheet requirements. *Id.*

On November 17, 2006, Petitioner was served with a letter of "Notice of Failure to Comply Pursuant to 8 CFR 241.4(g)." Doc. 14, p. 5; ex. Q. The notice explained to Petitioner how he was not complying with requests from ICE to assist in his removal. *Id.* Petitioner was advised that his custody status had been reviewed again and he would not be released from custody. Ex. Q. Petitioner was further advised that his removal period was extended due to his failure to cooperate. *Id.* Specifically, the notice stated that Petitioner had not provided ICE with a family tree as requested, and he had not provided proof of his citizenship. *Id.* That exhibit reveals another letter issued to

Petitioner, dated November 16, 2006, which provided the same information as stated on the Warning for Failure to Depart on November 16, 2006.  *Id.*

Petitioner was served with a third Warning for Failure to Depart form on November 16, 2006.  Doc. 14, p. 5; ex. R.  Once again, every box on that Warning was checked indicating Petitioner had not supplied any of the previously requested information.  *Id.*

As a final exhibit, Respondents have provided a table which lists all aliens successfully removed during 2004 and 2005 by region and country of nationality.  Ex. S.  That list reflects that in 2004, 162 total aliens were returned to Panama, and in 2005, 143 aliens were returned.  *Id.*  The vast majority of those aliens were criminal aliens.  *Id.*

**Analysis**

Because Petitioner is not challenging a final order of removal, but only seeking release from what he asserts is an unlawful and indefinite period of detention pursuant to <u>Zadvydas v. Davis</u>, 533 U.S. 678, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001), this Court has jurisdiction over this § 2241 habeas petition.  *See* doc. 1.  In <u>Zadvydas</u>, the United States Supreme Court considered a challenge to 8 U.S.C. § 1231(a)(6) and was asked to decide whether the statute authorized indefinite detention of a removable alien.[6]  The Court held that the continued detention of legal permanent aliens beyond the mandated 90-day removal period was permissible under the Constitution, but only for as long as was "reasonably necessary to bring about that alien's removal from the United States."

---

[6] Section 1231(a)(1)(A) provides that the government has a 90-day "removal period" to remove an alien ordered removed from the United States.  8 U.S.C. § 1231(a)(1)(A).

*Id.*, at 689, 121 S. Ct. at 2498. The Court interpreted the statute to avoid constitutional threat by concluding that "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.,* at 699, 121 S.Ct. at 2503. For the sake of uniform administration by the federal courts, the Zadvydas Court held that "the presumptive period during which the detention of an alien is reasonably necessary to effectuate his removal is six months; after that, the alien is eligible for conditional release if he can demonstrate that there is 'no significant likelihood of removal in the reasonably foreseeable future.' " Clark v. Martinez, 543 U.S. 371, 125 S.Ct. 716, 722, 160 L.Ed.2d 734 (2005), *quoting* Zadvydas, 533 U.S. at 701, 121 S.Ct. at 2505.

In Clark v. Martinez, *supra*, the Court extended its interpretation of 8 U.S.C. § 1231(a)(6) to inadmissible aliens.[7] The Court concluded that there was no reason why the period of time reasonably necessary to effect removal would be longer for an inadmissible alien than for an admissible alien. Clark, 543 U.S. at 386, 125 S.Ct. at 727. Thus, it held that the 6-month presumptive detention period prescribed in Zadvydas should be applicable. *Id.* Accordingly, under Clark and Zadvydas, when an alien shows that he has been held more than six months beyond the removal period and his removal is not reasonably foreseeable, a § 2241 petition should be granted. Clark, 543 U.S. at 386-387, 125 S.Ct. at 727; Benitez v. Wallis, 402 F.3d 1133, 1135

---

[7] The relevant statute provides: "An alien ordered removed who is inadmissible under section 1182 of this title, removable [for violations of nonimmigrant status or entry conditions, violations of criminal laws, or threatening national security] or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3)." 8 U.S.C. § 1231(a)(6), *quoted in* Benitez v. Wallis, 402 F.3d 1133, 1134 (11th Cir. 2005).

(11th Cir. 2005) (relying on Clark to hold that "an inadmissible alien can no longer be detained beyond the statutory 90-day removal period of § 1231(a)(1), where there was no significant likelihood of removal in the reasonable foreseeable future.").

Section 1231(a)(1)(A) provides that the government has a 90-day "removal period" to remove an alien ordered removed from the United States.  8 U.S.C. § 1231(a)(1)(A).  However, the removal period "shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal."  8 U.S.C. § 1231(a)(1)(C).[8]  Accordingly, the statute expressly permits an alien to be detained longer than the presumptive removal period, where the alien acts or conspires to prevent his removal.  Therefore, in considering whether there appears to be no significant likelihood of Petitioner's removal in the reasonably foreseeable future, the Court must consider whether Petitioner's removal has been delayed or extended by Petitioner's own efforts.

In Sango-Dema v. District Director, I.N.S., 122 F.Supp.2d 213 (D. Mass. 2000), case decided before Zadvydas, the court denied habeas relief where the Petitioner was found to be "the cause for the long delay."  The court stated, "[e]ven if this Court were to agree with the courts recognizing a constitutional right to be free from indefinite detention by the INS, an alien cannot trigger such a right with his outright refusal to cooperate with INS officials."  Sango-Dema, 122 F.Supp.2d at 221.

---

[8] During the "removal period" an alien must be detained.  8 U.S.C. § 1231(a)(2).

In Powell v. Ashcroft, 194 F.Supp.2d 209 (E.D.N.Y. 2002), a case decided in the wake of Zadvydas, the court noted that Zadvydas was concerned with the constitutionality of § 1231(a)(6) where aliens were in "deportation limbo because their countries of origin had refused to allow [them] entrance.' " Powell, 194 F.Supp.2d at 211, *citing* Sango-Dema, 122 F.Supp.2d at 221 (explaining Zadvydas).  The court held that Zadvydas was inapplicable because it "did not discuss the constitutionality of Section 1231(a)(1)(C) and the tolling of the removal period during the time of an alien's non-cooperation." Powell, 194 F.Supp.2d at 212, *citing* Guner v. Reno, 2001 WL 940576 (S.D.N.Y. Aug. 20, 2001).  The court held that petitioner's continued detention was appropriate because he had not "provide[d] accurate and complete information to the INS," and that after he did so, it was likely that he would be removed.  Powell, 194 F.Supp.2d at 212.  *See also* Archibald v. I.N.S., 2002 WL 1434391, *8 (E.D.Pa. July 1, 2002) (finding the case factually distinguishable from *Zadvydas* where "Archibald's detention [was] a direct result of his seeking relief from deportation" and holding that because his indefinite detention was a result of his requesting a stay, he could not "be heard to complain[] that the time period during which he has been detained constitute[d] a denial of due process."); Thevarajah v. McElroy, 2002 WL 923914 (E.D.N.Y. Apr. 30, 2002)(holding that petitioner's nearly five years in the custody of INS was constitutional following *Zadvydas* because the continued detention was lengthened largely because of petitioner's own actions); *cf.* Seretse-Khama v. Ashcroft, 215 F.Supp.2d 37 (D.D.C. July 22, 2002) (rejecting respondent's argument that petitioner "has not cooperated in obtaining travel documents because he told Liberian officials that he did not want to

return to Liberia" and noting that INS had not argued that "petitioner refused to request travel documents or refused to be interviewed by Liberian officials" and did not deny "his Liberian citizenship, or gave false or misleading information that impeded the issuance of travel documents.").

Another persuasive case on this issue is Pelich v. I.N.S., 329 F.3d 1057 (9th Cir. 2003), in which the court found that petitioner's detention was "indefinite only because he refuse[d] to cooperate with the Immigration and Naturalization Service's ("INS") efforts to remove him." Pelich, 329 F.3d at 1057. Thus, the court concluded that in those circumstances, the petitioner had "no cause to complain" and the denial of his § 2241 habeas petition was affirmed. 329 F.3d at 1057-58.

In a case before the Eastern District of New York, the court explained the various situations which had been held to toll the removal period:

> Section 1231 states that if an alien acts to frustrate the INS' ability to remove him, the removal period is tolled during the period of the alien's actions. 8 U.S.C. § 1231(a)(1)(C); Powell v. Ashcroft, 194 F.Supp.2d 209, 210 (E.D.N.Y. 2002). The limited case law on what constitutes a "frustration of removal" has not interpreted this phrase expansively: courts have only tolled the removal period in cases where the alien has sought and received a stay of removal through judicial action (*see* Akinwale v. Ashcroft, 287 F.3d 1050, 1052 (11th Cir. 2002)), or where the alien has demonstrated some sort of bad faith failure to cooperate, such as providing the INS with false or inconsistent information regarding his identity or country of origin (*see* Powell, *supra*; Ncube v. INS, No. 98 Civ. 0282, 1998 WL 842349 at *16 (S.D.N.Y. Dec. 2, 1998)), or refusing to complete travel arrangements or name a country for deportation (Riley v. Greene, 149 F.Supp.2d 1256, 1262 (D.Colo. 2001); Sango-Dema v. District Director, 122 F.Supp.2d 213, 221 (D.Mass. 2000); *Cf.* Ford v. Quarantillo, 142 F.Supp.2d 585, 588 (D.N.J. 2001) (ordering release of alien detained for 14 months, even though he misrepresented his country of origin)). Indeed, as Seretse-Khama has held, a petitioner's truthful statement (such as expressing that he did not wish to return to his country

of origin) which is later adopted by the country of origin as a reason for not wanting to repatriate that alien, is not an example of refusal to cooperate under § 1231(a)(1)(C), and cannot be used as a grounds for extending post-removal detention. Seretse-Khama v. Ashcroft, 215 F.Supp.2d 37, 50-53 (D.D.C. 2002).

Rajigah v. Conway, 268 F.Supp.2d 159, 165 (E.D.N.Y., 2003)(relying on the decision from Powell v. Ashcroft, *supra*). Ultimately, the court in Rajigah concluded that the petitioner had not acted in bad faith simply because he requested a stay of removal and "availed himself of judicial process and communicated to the Guyanese embassy his plans to" file an action in court. 268 F.Supp.2d at 166[9]

Cited in Rajigah is Seretse-Khama v. Ashcroft, 215 F.Supp.2d 37 (D.D.C. 2002). There, the court determined that simply because an alien tells the Consul of his country of citizenship that he did not want to return, he is not hindering his removal. 215 F.Supp.2d at 51. The court noted that the petitioner had not "refused to request travel documents or refused to be interviewed by Liberian officials." *Id.* No claims were before the court that the petitioner had denied his citizenship, "gave false or misleading

---

[9] Somewhat contrary to the Rajigah decision, though, is Akinwale v. Ashcroft, 287 F.3d 1050 (11th Cir. 2002). There, the petitioner was taken into custody by Immigration officials following release from incarceration. 287 F.3d at 1051. He filed a habeas petition just four months into his detention, asserting he "was being indefinitely detained . . . ." *Id.* The petition was denied based on a finding that the petitioner had not presented "a situation involving prolonged or indefinite detention pending removal." *Id.* In approving the dismissal of the case, the Eleventh Circuit Court of Appeals concluded that a four-month period of detention was not "prolonged" pursuant to Zadvydas, and, furthermore, the petitioner had not shown the unlikeliness of his removal in the foreseeable future. *Id.*, at 1051-52. In a footnote, the Eleventh Circuit noted that Akinwale's filing of the stay of deportation "interrupted the running of time under Zadvydas" and acted to extend his own removal period. *Id.*, at 1052, n.4. In this case, the Petitioner has not moved to stay a final order of removal, and it was filed more than two years after Petitioner was taken into custody..

information that impeded the issuance of travel documents." *Id.* Petitioner truthfully answered the Consul's questions during an interview, but simply and "honestly told the Consul that he did not want to return to Liberia in light of his lack of family in or ties to Liberia, which he left . . . when he was only eight years old." *Id.* The court concluded that such a statement without more did not amount to a "bad faith failure to cooperate." *Id.*[10]

It appears in this case, that Petitioner's six-month period of removal pursuant to Zadvydas has been tolled as permitted by 8 U.S.C. § 1231(a)(1)(C). In other words, the period of time by which Petitioner is found to be non-cooperative, has tolled the six months of presumptively reasonable period of time for removal as announced in

---

[10] In a footnote, the court surveyed the case law on the issue of what "constitutes an affirmative act that prevents one's return" or removal:

> Furthermore, most of the case law was decided before the Court's ruling in Zadvydas. *See, e.g.*, Bini v. Aljets, 2002 WL 535083, 36 Fed.Appx. 868 (8th Cir. 2002) (alien who obtained stay of proceedings in district court prevented his removal); Powell v. Ashcroft, 194 F.Supp.2d 209, 210-211 (E.D.N.Y. 2002) (alien who claimed in four affidavits that he was from U.S. Virgin Islands, Jamaica, Trinidad, and Canada, and provided false name and false date of entry, prevented his removal); Riley v. Greene, 149 F.Supp.2d 1256, 1262 (D.Colo. 2001) (alien who admitted he refused to complete travel arrangements and refused to name any country for deportation); Sango-Dema v. District Director, 122 F.Supp.2d 213, 221 (D.Mass. 2000) (alien who refused to provide passport and birth certificate, and refused to communicate with embassy officials or complete application for documents); Ncube v. INS, 1998 WL 842349, *16 (S.D.N.Y. Dec. 2, 1998) (failing to provide INS with passport or proof of identification or nationality; many statements false or at least contradictory); *cf.* Ford v. Quarantillo, 142 F.Supp.2d 585, 588 (D.N.J. 2001) (ordering release of alien detained for 14 months, even though he misrepresented his country of origin).

215 F.Supp.2d at 51, n.18.

Zadvydas.  See Francois v. Chertoff, 2006 WL 2668193, *3 (D.N.J., 2006)(citations omitted).  On separate occasions (September of 2006, and November of 2006), Petitioner has been issued Instruction Sheets requiring his assistance in establishing his identification and citizenship.  There has been no evidence submitted by Petitioner which demonstrates that he has made any effort to assist in the removal process or that he has done all that he was capable of doing in assisting ICE.  Petitioner has provided no demonstration that he has provided any identification cards, family information, or the like which would assist in his removal.  It appears that Petitioner is blocking his removal by refusing to provide any help to the government.  Petitioner has simply not come forward with any evidence that he is cooperating in the removal process.

      The documentary evidence in this case reveals that the last two times Petitioner was given an Instruction form, every box on that form was checked indicating a number of things Petitioner was required to do to assist in his removal.  There is no evidence that he provided that information.  Petitioner has chosen to remain silent and has not filed a Reply in this § 2241 proceeding.  Thus, Petitioner has failed to demonstrate that he is not hindering his removal and, therefore, he cannot complain about the delay in effecting his removal since he must be found to be the cause of the delay.  Respondents have provided evidence that Petitioner could be returned to Panama if he can establish his identification and citizenship.  Therefore, Petitioner has failed to make the showing required to be afforded relief in this proceeding.

Accordingly, it is **RECOMMENDED** that the petition for a writ of habeas corpus, doc. 1, filed by Huver Edmondo Rodriguez pursuant to 28 U.S.C. § 2241, be **DENIED.**

**IN CHAMBERS** at Tallahassee, Florida, on April 23, 2007.


          s/    William C. Sherrill, Jr.
          **WILLIAM C. SHERRILL, JR.**
          **UNITED STATES MAGISTRATE JUDGE**


### NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**